# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 21-0492V**

| | |
|---|---|
| SIDNEY GRIGGS,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 13, 2026 |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Mary Eileen Holmes, U.S. Department of Justice, Washington, DC, for Respondent.*

**DECISION ON ATTORNEY'S FEES AND COSTS**[1]

On January 11, 2021, Sidney Griggs filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving an influenza ("flu") vaccine on October 13, 2020. Pet., ECF No. 1.

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish reasonable basis in this claim. Thus, he is not entitled to an award of attorney's fees or costs.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History and the Parties' Arguments

The Petition in this case was filed without medical records or a detailed recitation of the facts, due to concerns about preserving the claim because of the then-anticipated removal of SIRVA from the Vaccine Injury Table.[3]

While this case was still in the "pre-assignment review" ("PAR") phase (which exists to ensure that claimants have filed records necessary for Respondent to react to the matter), Petitioner filed *17* motions for extensions of time to submit medical records (over the course of *more than two years*). ECF Nos. 7-9, 11-23. In March 2023, Petitioner finally submitted his vaccination record, medical records, and a declaration confirming there has been no prior civil action filed on his behalf. ECF Nos. 24-26. Petitioner did not file an amended Petition. I subsequently directed Petitioner to file the required PAR Medical History Questionnaire, any remaining outstanding medical records, and a statement of completion. Non-PDF Order, docketed Mar. 29, 2023.

Petitioner next submitted three more motions for extensions of time (thus now *20 motions* total) to file the outstanding information required during the PAR process. ECF Nos. 27-29. Though the motions were all granted, Petitioner still failed to submit the requested records as ordered. In July 2023, I issued an Order noting that Petitioner "ha[d] not yet filed a statement of completion to indicate that all documents required by the Vaccine Act ha[d] been filed." ECF No. 30. I warned Petitioner that "[d]ue to the amount of time that this case ha[d] been pending in PAR, this case w[ould] be granted one final extension of time before being reassigned for further proceedings." *Id.* On Petitioner's deadline, he instead filed his 21st motion for extension of time to comply. ECF No. 31.

This case was finally activated and reassigned to the Special Processing Unit ("SPU") on April 17, 2024, along with an Order requiring Petitioner to submit the outstanding documentation within sixty days (thus mooting the then-existing motion for an extension). ECF No. 32. Petitioner subsequently missed this deadline as well, but it was *sua sponte* extended. After an additional extension of his deadline, Petitioner filed another motion for extension of time, again merely stating he "require[d] additional time to comply with the aforementioned Order[;]" the motion was granted. ECF No. 35; Non-

[3] On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). The proposed rule was finalized six months later. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 86 Fed. Reg. 6249 (Jan. 21, 2021). Approximately one month later, the effective date for the final rule was delayed. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 86 Fed. Reg. 10835 (Feb. 23, 2021) (delaying the effective date of the final rule until April 23, 2021). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

PDF Order, docketed July 8, 2024. On August 19, 2024, Petitioner filed yet another motion for extension of time, reporting he "require[d] additional time to determine how he intends to proceed." ECF No. 36.

On August 26, 2024, after a review of the record, I issued an Order to Show Cause, instructing Petitioner to explain why his claim should not be dismissed for failure to prosecute, and to provide the other PAR information in regard to his claim by no later than October 10, 2024. Order to Show Cause at 3, ECF No. 37. In response, Petitioner filed an unsigned and undated "personal narrative" (though counsel contended it was received on November 23, *2021*,) and a Motion for a Decision Dismissing his Petition. ECF Nos. 38, 40. As requested, I granted Petitioner's Motion and dismissed his claim for failure to prosecute. ECF No. 41.

On May 13, 2025, Petitioner filed a request for an award of $24,535.55 in fees and costs, comprised of $21,898.20 in fees and $2,637.35 in costs. Mot., ECF No. 45. In support of reasonable basis, Petitioner noted that he submitted a vaccination record depicting receipt of the subject flu vaccine in his left arm on October 13, 2020, and that he sought care three weeks later, linking his left shoulder pain to the flu vaccine at that time. *Id.* at 3 (citing Ex. 4 at 24-26). He acknowledged, however, that he did not seek further care for his left shoulder symptoms. *See id.* Despite this acknowledgment, Petitioner relied on his personal narrative statement (drafted 13 months post-vaccination) to substantiate an injury that he maintained was ongoing for more than six months post onset. *Id.* at 3-4 (citing Ex. 6).

As added support for a finding of reasonable basis, Petitioner asserted that based on his own representations, "it appear[ed] that he met the requirements for an on-Table SIRVA[;]" leading him to seek additional records. Mot. at 3. Petitioner further argued that previously-obtained but *unfiled* chiropractic records from August and September 2021 documented ongoing left shoulder pain, and he offered those records along with his application for fees. *See id.* at 4; *see also id.* at Tab C. But review of those records had revealed that "it would be difficult to persuasively prove a nexus between [P]etitioner's [] flu vaccine and these subsequent treatment records." Mot. at 4. Thus, counsel "ceased substantive work on [P]etitioner's case and assisted him with trying to obtain alternate counsel, an effort that was ultimately unsuccessful." *Id.*

On May 27, 2025, Respondent objected to an award of fees and costs, stating that reasonable basis failed to exist at the time this claim was initiated and never materialized afterward. Resp., ECF No. 47. Respondent contended that Petitioner has not provided objective evidence to support his claim that his alleged injury lasted for more than six months post onset as required by the Vaccine Act. *Id.* at 6. Specifically, in the three years that this claim was pending, Petitioner failed to provide any records of treatment beyond

a single urgent care appointment for left shoulder pain three weeks post vaccination (plus his personal narrative statement). *Id.* (citing Ex. 4 at 22; Ex. 6). Respondent also argued that I should not consider the evidence submitted along with the fees request (i.e., chiropractic records) in determining whether the claim had a reasonable basis at the outset, as counsel could have submitted the records sooner but did not.[4] *Id.* at 8 (citing Mot., Tab C; *Goodgame v. Sec'y of Health & Hum. Servs.,* 157 Fed. Cl. 62, 73 (2021)). And even if the records had been timely filed, they did not support a finding that Petitioner's injury had continued for more than six-months post onset or provide evidence of reasonable basis. *Id.* at 10.

In his Reply, Petitioner maintained that once he obtained and reviewed Petitioner's chiropractic records (in February 2022), counsel stopped substantive work on this case and notified Petitioner that counsel would "no longer be able to move forward with his case." Reply, ECF No. 49 at 2-3. From February 2022 to May 2025, the time records show counsel was primarily working on three things, including: 1) reviewing said chiropractic records and determining how to proceed, 2) facilitating (unsuccessfully) the retention of alternate counsel, and 3) taking the necessary steps to dismiss Petitioner's claim. *Id.* at 3-4. Thus, relying on the Model Rules of Professional Conduct, counsel argued his actions during this timeframe were "justified and necessary." *Id.* at 4. Counsel also discussed Respondent's argument regarding his decision to include Petitioner's chiropractic records with his fee application, rather than file them when obtained (pursuant to *Goodgame*), and asserted that they were included because time was billed for collecting, reviewing, and discussing the records, and they ultimately led to the decision not to move forward with the claim; thus, these records are not the sole evidence Petitioner relied on to surmount the six-month severity issue.[5] *Id.* at 5.

## II. Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013)

[4] Indeed, Respondent highlighted that these chiropractic records were received by counsel *in February 2022*, but Petitioner did not ultimately file them at that time. Resp. at 8. And, according to Respondent, although Petitioner's counsel claimed he ceased substantive work on this case after receiving said records and discovering six-months sequalae could not be met, counsel's billing records nevertheless extend through 2025. *Id.* at 8, n.5 (citing Mot., Tab A at 6-8). Respondent also pointed out that the same billing records purportedly show that the collection and review of Petitioner's medical records and personal narrative took place in January 2022, but they were not submitted until March 2023 or later. *See id.*

[5] Petitioner did not seek compensation for the preparation of this Reply brief. *See* Reply at 6, n.7. Additionally, Petitioner was afforded an opportunity to file his Reply brief out of time. Non-PDF Order, docketed June 15, 2026.

(discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petitioner be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs*., 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[6] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs*., 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that

[6] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs*., 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs*., 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs*., No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## III. Medical Records

Petitioner's only treatment for left shoulder complaints occurred on November 4, 2020 (three weeks post vaccination), when he went to urgent care for his shoulder pain. Ex. 4 at 22. Petitioner reported that he "[r]eceived the flu vaccine . . . 1 ½ weeks ago in left arm[,]" and he now had "tingling in the left hand and pain in left upper deltoid." *Id.* Despite the entry of receiving a flu vaccine one and a half weeks ago (thus in late October), the date of onset was listed as "10/13/2020." *Id.* at 24. More specifically, Petitioner also reported that "he received an influenza vaccine to his left shoulder on 10/13/2020 and immediately felt an unusually sharp pain" that had not subsided. *Id.* He reiterated complaints of "tingling sensations that go down his left arm with weakness and decreased range of motion[.]" *Id.* Following a physical examination (revealing decreased motion and strength in the left shoulder), Petitioner was assessed with left shoulder tendinitis and "neuritis of upper extremity." *Id.* at 25-26. He did not seek further treatment thereafter, despite receiving referrals for additional treatment. *See id.*

Then, nine-to-ten months later (in August and September 2021), Petitioner attended chiropractic visits for various ailments. For example, on August 31, 2021, Petitioner had a chiropractic session for issues including left shoulder/neck/back pain "since 8/1/2021[,]" without a known mechanism of injury. Mot., Tab C at 1. He attended additional visits for shoulder/neck/back issues thereafter (throughout September of 2021), but also without linking his shoulder pain to the receipt of his subject flu vaccination. *See id.* at 7-18.

In an undated and unsigned "personal narrative" (seemingly *sent* to Petitioner's counsel on November 23, 2021, but *filed* only in response to my 2024 Order to Show Cause), Petitioner explains that he felt left shoulder pain immediately upon his receipt of his subject vaccination. Ex. 6. But the pain did not go away, so he sought medical attention at urgent care. *See id.* Once there, Petitioner stated that he was told to wait and see if the pain subsided but "it never went away." *Id.* Petitioner noted that at the time this narrative was drafted, he had been going to massage and chiropractic treatment but anything he had tried "doesn't get rid of the pain!!" *Id.* He thus had to limit his activities with his left shoulder. *Id.* Petitioner's statement does not describe his injury with any additional detail.

**ANALYSIS**

The record supports Respondent's arguments that this claim lacked a reasonable basis when filed - and one never materialized thereafter. While I am sympathetic to the urgency in initiating this action before counsel had had the opportunity to assess the substantive basis for this claim (i.e., the threat of removal of SIRVA from the Act's Vaccine Injury Table),[7] Petitioner had ample chance after to get that support – but then delayed in doing so over a *three-year* period. And the instant Petition does not *at all* describe an injury that persisted for more than six months post onset of a vaccine injury or otherwise include any details regarding Petitioner's alleged injury. *See generally,* Pet.

In particular, the filed record fails to contain any support for a vaccine-related shoulder injury that persisted long enough to meet the Act's six-months severity requirement. *See* 42 U.S.C. § 300aa-1 l(c)(l)(D)(i). Instead, the contemporaneous medical records (filed more than two years after the filing of the Petition) establish only a singular urgent care visit (on November 4, 2020, thus just *three weeks* post vaccination), at which time Petitioner linked his shoulder pain to the subject vaccination. Ex. 4 at 22. Petitioner did not return to care for his left shoulder symptoms at all thereafter, even though he received referrals for treatment with other specialists at that time. *See id.* at 25-26. The filed record therefore only supports an injury that continued for three weeks post vaccination, thus significantly shorter than the statutory six-month requirement.

Petitioner relies on his later chiropractic visits to support his position that his injury persisted for more than six months post onset (thus supporting a finding of reasonable basis herein). But those records wholly fail to evince an injury that was ongoing through at least his August-September 2021 chiropractic visits, which would encompass the six-month severity "cut-off" date in April 2021. Rather, those records show that during the

[7] Such caution on the part of Petitioner's counsel, although understandable, does not provide reasonable basis, which would otherwise not exist, for the claim's filing. *See Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017).

August 31, 2021 visit, Petitioner reported an onset of left shoulder issues (among others) beginning *that same month* (on August 1, 2021), and not attributable to a known injury, let alone his subject vaccination. Mot., Tab C at 1. Thus, these records do not substantiate the existence of an injury that likely continued for more than six months post onset.[8]

More so, these chiropractic records were only filed after the matter's dismissal, and in an effort to bulwark the pending fees request. While Petitioner acknowledges this fact, he also admits that upon counsel's review of said records in February 2022, it became apparent that Petitioner would have a difficult time connecting his original treatment to these subsequent treatment records, leading him to seek the claim's dismissal. Mot. at 4. But it is particularly unpersuasive for Petitioner to reference the evidence that led him to seek dismissal of the claim – evidence that was never offered during the claim's pendency – as supporting reasonable basis. And this is not a case in which the development of a fact, borne out of ambiguous records, *later* reveals fatal deficiencies that beforehand were not evident. Instead, the later-obtained chiropractic records only *further undercut* Petitioner's claim of an ongoing injury attributable to the flu vaccine he received.

In addition, it has not been shown why this evidence could not have been discovered – and filed – far sooner. Evidence submitted after judgment on the merits does not help form a reasonable basis for Petitioner's claim as filed. *See,* e.g., *Goodgame,* 157 Fed. Cl. at 73 (finding that the "time for introducing [evidence] was before the special master issued his ruling on the merits, when [it] could aid [the petitioner's] attempt to be compensated . . . not after [the petitioner] had lost on the merits and [the evidence] could only aid the attempt to collect fees").

The record (while the claim was still pending) thus contains *no* evidence linking Petitioner's later left shoulder pain to his vaccination, other than his personal narrative *generally and without detail* documenting his belief that the events were connected – expressed months to years after the Petition was filed and submitted in direct response to my 2024 Order to Show Cause. And it has not been shown that this evidence could not have been evaluated far sooner in the claim's existence, even before the case's filing (or under the circumstances, not long after).

Petitioner's counsel otherwise raises professional and ethical considerations in pursuing this claim as justification for inaction and/or substantiation of reasonable basis. But as the Federal Circuit has noted, these kinds of issues (for example, the understandable – even commendable - desire of an attorney to preserve a claim by filing

[8] I will also note that during these chiropractic visits, Petitioner complained of other issues outside of the vaccinated shoulder, including neck and back issues. These complaints would be inconsistent with a Table SIRVA claim – therefore further discrediting the effectiveness of these records in supporting Petitioner's ability to establish a reasonable basis for his claim.

on the eve of a statute of limitations cut-off, even though counsel has not had the chance to assess the claim's underlying merits) only establish a party's good faith in pursuing a claim, but is *not* objective proof in support of that claim. *See,* e.g., *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017). The satisfaction of a lawyer's ethical obligations in representing a client does not also mean the claim counsel pursues has reasonable basis.

Reasonable basis is admittedly an exceedingly-easy test to meet, and many claims that look facially weak even at the outset of filing can pass it. But here, there was never any substantive evidence that the claim could meet the severity requirement – no objective record proof. Counsel took a risk in accepting this claim, and while he may have acted in good faith, he bears the financial burden of that risk in pursuing such a baseless claim for so long.

## Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.